UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **DAVID CENTERS,** | **CIVIL ACTION NO. 5:14-194-KKC** |
| **Plaintiff,** | |
| V. | **MEMORANDUM** <br> **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 9; DE 10). Plaintiff David Centers brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an

> impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Centers filed his claim for DIB in July 2009, alleging an onset date of December 20, 2007. (Tr. at 9.) The agency denied his application initially and on reconsideration. (Tr. at 9.) Centers requested review by an ALJ, and the ALJ held a hearing on June 15, 2010 (Tr. at 86-110.) The ALJ subsequently issued an unfavorable decision on August 5, 2010 (Tr. at 9, 145.) After granting Centers' request for review, the Appeals Council vacated the ALJ's

decision and remanded the case for the ALJ to obtain additional evidence to clarify plaintiff's work activity after the alleged onset date; to evaluate the severity of plaintiff's alleged hand impairment; to determine a new residual functioning capacity; and if warranted, to obtain supplemental evidence from a vocational expert clarify the effect of the assessed limitations on the relevant occupational base. (Tr. at 144-48.) The Appeals Council directed the ALJ to limit his or her decision to the period of December 20, 2007, the alleged onset date, to December 31, 2009, the claimant's date last insured. (Tr. at 145). Accordingly, on October 23, 2012, a hearing was held before a different ALJ. (Tr. at 28-85.) The ALJ issued an unfavorable decision on November 16, 2012. (Tr. at 6-26.)

During the time period in question, Centers was forty-seven to forty-nine years old. He has a ninth-grade education and previously worked as a manufacturing laborer, a machine operator, an over-the-road truck driver, and a construction laborer. (Tr. at 40-51.) The vocational expert ("VE") described Centers' past work as "unskilled" and "semi-skilled" employment. (Tr. at 77-78.) Centers alleges disability due to osteoarthritis in multiple joints, including the hands; chronic low back pain; hypertension; pulmonary heart disease; COPD; migraines; loss of muscle strength in upper right extremity; hypolipidemia; gastroesophageal reflux disease; degenerative disc disease; degenerative joint disease; anxiety; and depression. (Tr. at 52.)

At the first step, the ALJ determined that Centers did not engage in substantial gainful activity from his alleged onset date of December 20, 2007, through his date last insured of December 31, 2009. (Tr. at 11.) At the second step, the ALJ determined that through the date last insured Centers suffered from the following severe impairments: "coronary artery disease with ischemic heart disease, status post two stent placements and congestive heart failure; degenerative disc disease of the lumbar spine; arthritis of the

hands and shoulders, bilaterally with a history of glass laceration of right hand; chronic obstructive pulmonary disease; depression and anxiety." (Tr. at 12.) The ALJ found that the other alleged impairments were non-severe and that "no functional limitations [were] established in conjunction with these conditions." (Tr. at 12-13.) At the third step, the ALJ concluded that Centers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. at 13-15.)

Next, the ALJ reviewed the record to determine Centers' residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1). In finding Centers' RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Centers and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. § 404.1527; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ determined that Centers had the following RFC:

> [He] could lift or carry no more than fifteen pounds occasionally, ten pounds frequently; stand or walk no more than six hours during an eight-hour workday and for no more than 45 minutes at one time. He could perform unlimited pushing/pulling up to the exertional limitations; perform no reaching above shoulder height bilaterally and no more than occasional reaching, handing or feeling bilaterally. The claimant could no more than frequently perform fine fingering or gross manipulation; perform no work around dusts, fumes, gases or other pulmonary irritants; no crawling or climbing of ladders, ropes or scaffolds and no more than occasional balancing, stooping, crouching, kneeling or climbing ramps or stairs. The claimant was limited to no more than simple, routine work, with no more than occasional contact with the general public and no more than occasional interaction with coworkers or supervisors as well as no more than occasional, if any, changes in the workplace setting.

(Tr. at 15.) The ALJ noted that through the date last insured Centers' had the RFC to "perform less than the full range of light work" as defined in 20 C.F.R. § 404.1567(b). (Tr. at 15.)

The ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Centers' age, education, work experience, and RFC could perform any of Centers' previous jobs. (Tr. at 78-80.) The VE testified that this hypothetical individual could not perform Centers' past work. (Tr. at 80.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs available in the regional or national economy, and the VE stated that this hypothetical individual could work as an assembler, inspector, or ticket seller. (Tr. at 80-81.) In response to a subsequent question limiting the hypothetical person to sedentary work, the VE stated that hypothetical person could work as a surveillance system monitor. (Tr. at 83.) Therefore, the ALJ found Centers not disabled. (Tr. at 21.)

The ALJ's decision that Centers was not disabled from December 20, 2007 through December 31, 2009 became the final decision of the Commissioner when the Appeals

Commission subsequently denied Centers' request for review on April 23, 2014. (Tr. at 1-3.) Centers has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). "'The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision[ ]makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### IV. ANALYSIS

Centers does not challenge the ALJ's findings at any of the first four steps. Instead, plaintiff argues that under the fifth step, the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that plaintiff can perform. (*See* DE 9-1 Pl.'s Mem. at 2-6.) Specifically, Centers contends that the inclusion of a limitation to "simple, routine work" in the RFC assessment precluded the alternative jobs of assembler, inspector, ticket seller, and surveillance system monitor, so the VE's testimony

was inconsistent with the DOT, and the ALJ erred in failing to resolve this conflict. *Id.* The Court finds plaintiff's argument unpersuasive.

The ALJ found that plaintiff had the RFC to perform "simple, routine work." (Tr. at 15.) Plaintiff notes that each of the alternative jobs found by the ALJ to be consistent with this RFC assessment has a "Reasoning Development Level" of 2 or 3 as rated by the Scale of General Education Development set forth in the DOT. *See* DOT, App. C. § III, 1991 WL 688702. Reasoning Development Level 2 positions require the individual to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving few concrete variables in or from standardized situations." *Id.* Reasoning Development Level 3 jobs require the individual to be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Plaintiff contends that these "reasoning development levels" are incompatible with plaintiff's RFC as found by the ALJ.

The VE's testimony at the administrative hearing undermines this argument. The ALJ's hypothetical questions to the VE specifically included the "simple, routine work" restriction. The VE testified that such an individual would be able to perform the jobs ultimately found by the ALJ to be within plaintiff's RFC. (Tr. 80-83.)

Centers argues that the ALJ was required to delve further and explore the apparent conflict between plaintiff's assessed RFC and the DOT definitions. The ALJ clearly has an affirmative duty to inquire of the VE whether her testimony conflicts with the information provided in the DOT. SSR 00-4P, 2000 WL 1898704, at *4 (Dec. 4, 2000). Here, the ALJ did so inquire, and the VE confirmed that her testimony was consistent with the DOT. (Tr. at 84). Moreover, at the beginning of her testimony, the ALJ requested that the VE inform

him if any of her testimony conflicted with the DOT, and the VE never suggested that a conflict existed. (Tr. at 75.) Plaintiff's counsel did not raise this issue during the hearing, and this is not an instance in which the alleged conflict was so "obvious . . . that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008). The ALJ, therefore, was entitled to rely on the VE's testimony, which constitutes substantial evidence in support of his decision. *See Martin v. Comm'r of Soc. Sec.,* 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

Moreover, plaintiff's past relevant work included that of a construction laborer and over-the-road truck driver. (Tr at 47-50, 78.) These positions have a Reasoning Development Level of 3. *See* DOT 869.644-014, 1991 WL 687601; DOT 904.383-010, 1991 WL 687703. Thus, plaintiff has demonstrated in the past that he has the education level necessary to perform jobs with a Reasoning Development Level of 3. *See* DOT, App. C; § III, 1991 WL 688702 (stating that General Education Development levels "embrace[ ] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance"). The ALJ's finding that plaintiff could not perform his past relevant work was predicated upon the ALJ's determination that plaintiff's physical limitations precluded the performance of medium to heavy exertion work. (Tr. at 19.) The ALJ's decision was not based on a decrease in plaintiff's mental or educational abilities. (Tr. at 19.) In light of these facts, plaintiff's argument that he cannot perform jobs with a Reasoning Development Level of 2 or 3 is unpersuasive.

## V. CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 9) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 10) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated June 10, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY